IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Heather Disher, | ) | C/A No.: 4:25-cv-03782-SAL-KDW |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| | ) | REPORT & RECOMMENDATION |
| Town of Kingstree; Kipp Coker, in his | ) | |
| individual and official capacities; | ) | |
| Williamsburg County Sheriff's Office; | ) | |
| Kimberly Marlow, in her individual and | ) | |
| official capacities; Archie Kennedy, in his | ) | |
| official and individual capacities; Stephen | ) | |
| Gardner, in his official and individual | ) | |
| capacities; and Merianne Cowley, | ) | |
| | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

On March 27, 2025, Heather Disher ("Plaintiff") filed a civil action in the Williamsburg County Court of Common Pleas against Defendants, alleging one or more Defendants violated her rights afforded her by the Constitution of the United States under 42 U.S.C. § 1983. ECF No. 1-1. Several weeks later, on May 5, 2025, Defendants Town of Kingstree, Kipp Coker, Kimberly Marlow, and Merianne Conley removed this action to federal court. ECF No. 1. On May 8, 2025, Defendants Town of Kingstree, Kipp Coker, Kimberly Marlow, and Merianne Cowley filed their Motion to Dismiss, seeking dismissal of some of Plaintiff's claims, as well as an Answer to the Complaint.[1] ECF Nos. 4; 5. Plaintiff filed a Response to the Motion on June 24, 2025. ECF No. 18. All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Local Civil Rule 73.02(B)(2), D.S.C, which provides for all

---

[1] Defendants Stephen Gardner, Archie Kennedy, and the Williamsburg County Sheriff's Office ("WCSO") filed their Answer on May 23, 2025. *See* ECF No. 12.

pretrial proceedings in certain types of matters be referred to a United States Magistrate Judge. This matter is now ripe for review.

I.      Factual Background

This background is derived from Plaintiff's Complaint and the allegations contained therein. ECF No. 1-1. According to Plaintiff, prior to the incident forming the basis of her Complaint, she was a long-time employee of Defendant Town of Kingstree's Water Department. Compl., ¶ 1; ECF No. 1-1. Plaintiff was employed as the Director of the Water Department for approximately five years. Compl., ¶ 9. In Fall of 2023, Plaintiff approached Defendant Merianne Cowley, the finance manager for Kingstree, seeking permission to use town money to give her employees within the water department holiday gifts, specifically a ham or a turkey for a holiday meal. Compl., ¶ 10. Defendant Cowley refused the request. Compl., ¶ 10. Plaintiff discussed ideas with her employees, and they decided to have a holiday dinner party, wherein each employee would be responsible for his or her own meal and drinks. Compl., ¶ 11. Plaintiff made a group reservation at a restaurant. *Id.* Around this same time, in early December 2023, Plaintiff was apparently approached by Cowley to discuss the water department's "petty cash" box, which had historically been accessible to any member of the department. Compl., ¶ 12. Cowley now required Plaintiff to carry the only key to the box and to keep it with her at all times. *Id.*

One day after Plaintiff made the group reservation for the holiday dinner, she learned via the restaurant manager that the restaurant required a $100.00 deposit to hold the reservation. Compl., ¶ 13. Plaintiff discussed this with her team, and because no one had sufficient cash on hand, Plaintiff used $100.00 from the petty cash box to pay the restaurant deposit, with the agreement that all employees would each pay back his or her pro rata share. *Id.*

A few days later, Plaintiff fell ill to the point of requiring hospitalization; as a result, the

date for the holiday party passed, and the dinner did not occur. Compl., ¶ 14. The deposit was forfeited. *Id.* By the time Plaintiff returned to work, she had forgotten about the restaurant deposit. *Id.* During the time that Plaintiff was hospitalized, she retained the key to the petty cash box; however, Cowley accessed the cash box by using a paper clip to "break into" the box. Compl., ¶ 15. When Plaintiff returned to work, she realized that the cash box was now located in Cowley's office. Compl., ¶ 16.

Later, in February 2024, Cowley confronted Plaintiff about "missing money" from the petty cash box. Compl., ¶ 16. Plaintiff, initially confused, recalled the restaurant deposit, returned the $100.00, and explained to Cowley what happened. Compl., ¶ 16. However, Plaintiff alleges Cowley remained accusatory. *Id.* Plaintiff believes Cowley has been hostile toward her since the inception of her employment, and Cowley's distaste for Plaintiff stems from an "interpersonal relationship" outside of work. *Id.*

At the end of February, the long-tenured town administrator retired, and Defendant Kipp Coker became the Town Administrator for the Town of Kingstree. Compl., ¶ 17. Plaintiff learned of this change upon her return from work after missing one week due to her COVID-19 diagnosis. Compl., ¶ 17. Approximately one week later, on March 13, 2024, Plaintiff alleges that Defendant Kimberly Marlow, the new Chief of Police for Kingstree, demanded that Plaintiff "go for a ride" with her. Compl., ¶ 18. According to Plaintiff, Marlow took her to an isolated, vacant building, held her against her will for several hours, and began interrogating her and berating her regarding the "missing" cash box money. *Id.* Eventually, Defendant Kipp Coker arrived and attempted to force Plaintiff to confess to crime. Compl., ¶ 19. Upon her refusal, Coker tried to force Plaintiff to undergo a polygraph examination. *Id.*

The next day, Plaintiff accompanied a clerk from the water department to the police station

for questioning by Defendant Marlow. Compl., ¶ 20. During this meeting, Plaintiff alleges that Marlow accused her of theft multiple times in front of the clerk and others. Compl., ¶ 20. Coker also came to the police department with another employee and terminated Plaintiff's employment, read Plaintiff her *Miranda*[2] rights and attempted to force Plaintiff to sign a document, while at the same time stating to her that she was not under arrest. Compl., ¶ 21.

Plaintiff indicated her desire to leave the police department and stated, "I'm done with this," resulting in Defendants Coker and Marlow involuntarily committing Plaintiff to a hospital. Compl., ¶ 22. Plaintiff was repeatedly referred to as an "inmate" or "prisoner" when she was escorted in front of the general public for transport, as well as while she was at the hospital. Compl., ¶ 23. Plaintiff retained counsel a few weeks later, and her counsel sent a letter to Defendant Kingstree seeking to settle the matter; however, Plaintiff alleges in retaliation for sending the letter, she was charged with petit larceny. Compl., ¶¶ 24-26. Plaintiff further alleges the warrant affidavit submitted by Defendant Archie Kennedy, a deputy with the Williamsburg County Sheriff's Office ("WCSO"), was "intentionally misleading and maliciously drafted." Compl., ¶ 28. Plaintiff asserts Kennedy had full knowledge of the events that transpired regarding the $100 petty cash. Compl., ¶ 28.

Plaintiff alleges Defendant Coker specifically requested from Defendant Stephen Gardner, the Sheriff of Williamsburg County, that Plaintiff undergo a strip search, wear prison clothing and handcuffs and be arraigned in open court, which is not normally required for an individual turning him or herself in for a minor misdemeanor. Compl., ¶ 29. Plaintiff also learned that Kennedy, either by himself or in concert with Gardner, posted about the arrest on a WCSO social media page. Compl., ¶ 31. Defendants WCSO, Kennedy, and Gardner also issued a press release detailing

---

[2] *Miranda v. Arizona*, 384 U.S. 436 (1966).

the arrest, including false descriptions of Plaintiff. Compl., ¶ 31.   According to Plaintiff, the vast majority of the crimes afforded press releases are felony charges, with the exception of her minor misdemeanor. Compl., ¶ 32.

Plaintiff was unable to obtain employment after the arrest, despite applying to over 150 positions. Compl., ¶ 33. Plaintiff eventually sought unemployment compensation from the South Carolina Department of Employment and Workforce; however, after initially receiving benefits, Defendant Coker and Defendant Kingstree appealed the decision, and she was disqualified from receiving benefits and had to repay benefits previously received. Compl., ¶¶ 34; 36.   Plaintiff's case went to a trial on October 8, 2024, where the jury returned a not guilty verdict in "less than three minutes." Compl., ¶ 38. As of the filing of her Complaint, Plaintiff states that Defendants WCSO, Kennedy, and Gardner have not removed the social media post, she has not had her former position reinstated, she remains unemployed despite efforts in search of employment, she has been diagnosed with post-traumatic stress disorder, and her character and reputation have been falsely impugned. Compl., ¶¶ 39-40. Plaintiff brings several causes of action against Defendants, including defamation, false imprisonment and false arrest, assault, battery, malicious prosecution, intentional infliction of emotional distress, civil conspiracy, abuse of process, invasion of privacy, negligent supervision/training/retention, public policy wrongful discharge, and several claims pursuant to 42 U.S.C. § 1983, including violations of the Fourth Amendment, Fourteenth Amendment, and First Amendment, as well as a *Monell*[3] claim against Defendant Town of

---

[3] *Monell v. New York City Department of Social Services*, 436 U.S. 658 (1978).  The Supreme Court case of *Monell* held that municipalities can be liable only for their own illegal acts. Specifically, "§ 1983 liability may attach to a municipality for the misconduct of its police force." *Randall v. Prince George's Cty., Md.*, 302 F.3d 188, 210 (4th Cir. 2002). Pursuant to *Monell*, municipal liability can result "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." 436 U.S. at 694

Kingstree.

II.     Standard of Review

Defendants Town of Kingstree, Kipp Coker, Kimberly Marlow, and Merianne Cowley bring this Motion pursuant to 12(b)(6) of the Federal Rules of Civil Procedure. "A motion filed under Rule 12(b)(6) challenges the legal sufficiency of a complaint." *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009). A motion to dismiss for failure to state a claim should not be granted unless it appears certain that the plaintiff can prove no set of facts that would support his claim and would entitle him to relief. Fed. R. Civ. P. 12(b)(6). The Supreme Court considered the issue of well-pleaded allegations, explaining the interplay between Rule 8(a) and Rule 12(b)(6) in *Bell Atlantic Corp. v. Twombly*:

> Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level . . .

550 U.S. 544, 555 (2007) (internal citations omitted); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." (citing *Twombly*, 550 U.S. at 556); *see also Tobey v. Jones*, No. 11-2230, 2013 WL 286226, at *3 (4th Cir. Jan. 25, 2013) (affirming district court's denial of Rule 12(b)(6) motion, noting that *Twombly* reiterated that a plaintiff "was not required to state [] precise magical words" to plausibly plead claim). When ruling on a motion to dismiss, the court "must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). The court is also to "'draw all reasonable inferences in favor of the plaintiff.'" *E.I. du Pont de Nemours & Co.*

*v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (quoting *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009)).

Although a court must accept all *facts* alleged in the complaint as true, this is inapplicable to legal conclusions, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal,* 556 U.S. at 678 (citation omitted). While legal conclusions can provide the framework of a complaint, factual allegations must support the complaint for it to survive a motion to dismiss. *Id.* at 679. Therefore, a pleading that provides only "labels and conclusions" or "naked assertion[s]" lacking "some further factual enhancement" will not satisfy the requisite pleading standard. *Twombly,* 550 U.S. at 555, 557. Further, the court need not accept as true "unwarranted inferences, unreasonable conclusions, or arguments." *E. Shore Mkts., Inc. v. J.D. Assocs., Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000).

III.     Analysis

Defendants Coker, Marlow, and Cowley were all employed by Defendant Town of Kingstree during the time period relevant to the allegations in Plaintiff's Complaint. These Defendants argue that the claims against them must be dismissed. The undersigned considers each argument below.

A.  South Carolina Tort Claims Act

1.  Defendants Coker, Marlow & Cowley

Coker, Marlow and Cowley argue that any claims brought against them pursuant to the South Carolina Tort Claims Act ("SCTCA") are improper, as the SCTCA protects them in their position as government employees acting in the course and scope of their employment. Plaintiff disagrees, arguing that she has alleged these Defendants' conduct constituted "actual fraud, actual malice, intent to harm, or a crime involving moral turpitude." Pl.'s Br. at 6; ECF No. 18; *see also*

S.C. Code Ann. § 15-78-70(b).

The SCTCA is the exclusive remedy for any tort committed by an employee of a governmental entity. S.C. Code Ann. § 15-78-70(a); *see also Murphy v. Richland Mem'l Hosp.*, 455 S.E.2d 688, 317 S.C. 560 (S.C. 1995). The SCTCA provides that when an employee is individually named, the agency or political subdivision for which the employee was acting must be substituted as the party defendant. S.C. Code Ann. § 15-78-70(c). Under the SCTCA, an employee may not be personally liable *unless* "it is proved, not alleged that his conduct was not within the scope of his official duties or that it constituted fraud, actual malice, intent to harm, or a crime involving moral turpitude." S.C. Code Ann. § 15-78-70(b) (emphasis added).

Defendants Coker, Marlow and Cowley are correct that the SCTCA requires a plaintiff to "sue the agency for which the employee works, rather than suing the employee directly" if a plaintiff claims a government employee acted negligently in the official performance of one's duties. *Faulkner v. York County School District*, No. 0:21-CV-02090-JMC, 2022 WL 673684, *5 (D.S.C. March 7, 2022) (quoting *Flatau v. Harrelson*, 584 S.E.2d 413, 418 (S.C. Ct. App. 2003)). An employee of a governmental entity is immune from suit for tortious acts committed within the scope of his or her official duties. *Id.* Defendants argue that Plaintiff's Complaint does not sufficiently plead that they were acting outside the course and scope of their employment, and therefore the state law claims brought against them individually must be dismissed.

Under the SCTCA, for any given tort, either the governmental entity or the employee is liable, but not both. *Newkirk v. Enzor*, 240 F. Supp.3d 426, 436 (2017). There are two avenues for suit under the SCTCA. If an employee's tortious actions fall within the protection of this provision, *the employee* is immunized from liability, and the plaintiff must sue the governmental entity, rather than the employee. *Botten v. Charleston Cnty. EMS*, No. 2:23-CV-05064-DCN, 2024 WL

1120332, at *6 (D.S.C. Mar. 14, 2024) (citing *Newkirk*, 240 F. Supp. 3d at 436). Alternatively, if a plaintiff proves that an "employee's conduct was not within the scope of his official duties *or* that it constituted actual fraud, actual malice, intent to harm, or a crime involving moral turpitude," then the government agency is not liable, and instead, the employee is personally liable. *Id.* This principle was clearly explained in *Botten*, where this court pointed out that a plaintiff may not proceed against both the governmental entity and the employee as to the claims. *Id.*

Plaintiff responds that she has adequately pled actual malice and intent to harm on the part of the individual Defendants. *See* Pl.'s Br. at 6; ECF No. 18. Plaintiff points to the following allegations within her Complaint: (1) that Cowley intentionally had Plaintiff fired from her job under false pretenses; (2) Cowley had Plaintiff charged with a crime, despite Cowley's knowledge that Plaintiff was not guilty of a crime; (3) Cowley maliciously defamed Plaintiff, thereby harming Plaintiff's reputation in the community. *See* Pl.'s Br. at 8; *see also* Pl.'s Compl., ¶¶ 43; 45; 46; 48; 49; 59; 62; 64; 70; 72 (as to Coker); 75; 81; 86; 93; 95; 104; 111, ECF No. 1-1. The undersigned agrees that Plaintiff has sufficiently pled that these Defendants acted with actual malice and intent to harm with respect to her tort causes of action; therefore, Plaintiff may maintain these tort causes of action against Defendants Cowley, Coker, and Marlow, as the allegations fall outside the scope of the SCTCA.

## 2. Town of Kingstree

Plaintiff further argues that if she does not prove actual malice or intent to harm on the part of the individual Defendants, Town of Kingstree would still be liable under the SCTCA, and that the liberal federal pleading requirements allows her to plead alternative theories of relief at this stage of the litigation. *See* Pl.'s Br. at 8; *see Watson v Adams*, No. 4:12-cv-3437-BHH, 2017 WL 1001122 (D.S.C. Mar. 15, 2017). However, unlike the plaintiff in *Watson*, Plaintiff has not

pled alternative theories of liability in her Complaint. Plaintiff has pled that these Defendants acted with actual malice or intentionally acted to harm Plaintiff.[4] Plaintiff is the master of her Complaint, and the court must look to the allegations to determine what theories of liability Plaintiff asserts against Defendants. Indeed, in reviewing the Complaint, Plaintiff does not allege the individual employees acted negligently or otherwise engaged in conduct that was not intentional. Accordingly, the undersigned finds that the claims brought pursuant to the SCTCA against the Town of Kingstree should be dismissed as Plaintiff has not sufficiently pled alternative theories of liability to suggest the Town of Kingstree should be liable under the SCTCA.[5]

---

[4] In a few places, Plaintiff does allege Defendants "acted both inside and outside of Town of Kingstree's employment." *See* Compl.; ¶ 43. However, unlike the plaintiff in *Watson*, Plaintiff does not plead causes of actions against Town of Kingstree as an alternative claim. Nor does Plaintiff specifically allege they were acting within the scope of their employment when bringing her causes of action. Within the claims brought by Plaintiff, she clearly alleges that Cowley, Coker and Marlow acted "intentionally" or "knowingly," as to the claims asserted against them. The allegations of conduct, if believed, could only be described as conduct with an intent to harm, or malicious, or fraudulent, regardless of whether it is inside or outside the scope of employment. Plaintiff does not allege these Defendants acted negligently in pursuing criminal charges against her.

[5] The Town of Kingstree further argues that even if Plaintiff has sufficiently pled claims against it, Plaintiff's claims are subject to an exception to the limited waiver of liability found in the SCTCA. Under S.C. Code Ann. § 15-78-60, a government entity "is not liable for loss resulting from . . . (5) the exercise of discretion or judgment by the governmental entity or employee or the performance or failure to perform any act or service which is in its discretion or judgment of the governmental entity or employee." Plaintiff argues that the burden of establishing this exception applies is on the Town of Kingstree. Plaintiff argues Town of Kingstree has not explained why this discretionary exception applies to any specific cause of action alleged by Plaintiff. Further, Plaintiff cites to *Clarke v. S.C. Dep't of Public Safety*, which provides that the governmental entity must prove that its employees "actually weighed competing considerations and made a conscious choice." 608 S.E.2d 573, 578, 362 S.C. 377 (2005). The undersigned agrees with Plaintiff that, should the district judge not accept the undersigned's recommendation that the claims brought pursuant to the SCTCA against it are not viable, the Town of Kingstree does not explain why the exception in the SCTCA should otherwise apply to bar these claims.

3.  Specific Tort Law Claims

a.  Intentional Infliction of Emotional Distress

Defendants next argue that Plaintiff's Intentional Infliction of Emotional Distress claim is barred by S.C. Code Ann. § 15-78-30(f). Plaintiff acknowledges that if she brought this claim against the Town of Kingstree, Defendants might be correct. However, Plaintiff argues that she may recover under state common law outside of the SCTCA against the individual Defendants because she alleges they acted with actual malice and intent to harm. *See* Pl.'s Br. at 11. In *Hedgepath v. East Richland Public Service District*, this court explained that a state employee can be held personally liable for this tort if the conduct "constituted actual fraud, actual malice, intent to harm, or a crime involving moral turpitude." No. 3:21-CV-01705-JMC, 2022 WL 673741, at *2 (D.S.C. Mar. 7, 2022) (citing S.C. Code Ann. § 15-78-70(b)). Here, Plaintiff alleges the individual Defendants acted intentionally and/or recklessly in inflicting emotional harm upon her. *See* Compl., ¶ 83. Therefore, Plaintiff's claim for intentional infliction of emotional distress against the individual Defendants is not barred. *See Smith v. Ozmint*, 394 F. Supp. 2d 787, 792 (D.S.C. 2005) (noting a state employee can, in some circumstances, be held personally liable by a federal court for some intentional torts).

b.  Negligent Training/Supervision/Retention

Town of Kingstree argues that Plaintiff's negligent training and supervision or retention claim should be dismissed, because she fails to allege sufficient facts to support this claim. Plaintiff argues she has sufficiently plead deficiencies in the employees' training to impute liability to the Town of Kingstree. The South Carolina Supreme Court has found an employer may be liable under a theory of negligent supervision when an employee, acting outside the scope of employment, "intentionally harms another while using a chattel of the employer, if the employer knew or should

have known that it had the ability to control its employee and that there was the need and opportunity for it to exercise such control." *Holcombe v. Helena Chem. Co.*, 238 F. Supp. 3d 767, 771 (D.S.C. 2017) (quoting *Degenhart v. Knights of Columbus*, 420 S.E.2d 495, 496, 309 S.C. 114 (1992)). Negligent hiring or retention cases consider the knowledge of the employer and foreseeability of harm to third parties. *Id.* at 770. Town of Kingstree further argues that a negligent hiring and retention claim turns on whether a plaintiff alleges or "demonstrate[s] some propensity, proclivity, or course of conduct sufficient to put the employer on notice of the possible danger to third parties." *Doe v. ATC, Inc.*, 624 S.E.2d 447, 451, 367 S.C. 199 (S.C. Ct. App. 2005). However, *Doe* also explains, "[a] single isolated incident of prior misconduct (of which the employer knew or should have known) may support a negligent retention claim, provided the prior misconduct has a sufficient nexus to the ultimate harm." *Id.*

Here, Plaintiff alleges Defendants Coker and Marlow were "improperly trained and/or supervised with regard to reasonable suspicion, probable cause, and pre-arrest seizure" as well as the grounds for "civil commitment." Compl., ¶ 114. Plaintiff alleges Defendants Coker, Marlow, and Cowley were "improperly trained and/or supervised with regard to proper handling of sensitive matters and potential defamation." Compl., ¶ 114. Plaintiff also alleges the Town of Kingstree was put on notice of these problems, detailing what she believes constitute notice; that is, she explained Cowley's personal dislike and mistreatment of Plaintiff, as well as Plaintiff's attorney sending the Town of Kingstree a letter regarding improper treatment. Compl., ¶ 115. Plaintiff alleges despite this notice, the Town of Kingstree did not adjust any training, retained these employees, and "allowed further attacks on the Plaintiff." Compl., ¶ 115. At this stage of the litigation, the undersigned finds that these allegations suffice to state a claim against the Town of Kingstree.

c.  Malicious Prosecution

Defendants next argue Plaintiff's state law malicious prosecution claim is barred by the SCTCA. South Carolina defines "malice" as it is used in the tort of malicious prosecution as "the deliberate, intentional doing of a wrongful act without just cause or excuse." *Fields v. Richland Cnty. Sheriff's Dep't*, No. 3:17-CV-0443-MGL-TER, 2018 WL 4560538, at *5 (D.S.C. May 25, 2018), *report and recommendation adopted*, No. 3:17-CV-0443-MGL-TER, 2018 WL 4001830 (D.S.C. Aug. 22, 2018). The tort of malicious prosecution ordinarily involves the institution of a criminal prosecution without probable cause. The element to establish for malicious prosecution include: (1) the institution or continuation of original judicial proceedings; (2) by or at the instance of the defendant; (3) termination of any such proceeding in plaintiff's favor; (4) malice in instituting such proceedings; (5) want of probable cause; and (6) resulting injury or damage. *Zimbelman v. Savage*, 745 F. Supp. 2d 664, 683–84 (D.S.C. 2010); *see also Eaves v. Broad River Elec. Coop.*, 289 S.E.2d 414, 415, 277 S.C. 475 (S.C. 1982). The SCTCA provides that, "a governmental entity is not liable for a loss resulting from . . . institution or prosecution of any judicial or administrative proceeding." S.C. Code Ann. § 15-78-60(23). Plaintiff acknowledges that Defendants may be correct that the SCTCA bars a malicious prosecution claim as to the Town of Kingstree; however, Plaintiff argues her malicious prosecution claims against the individual Defendants survive. *See Thompson v. City of Columbia*, No. 3:05-CV-1605-CMC, 2005 WL 8164911, at *4 (D.S.C. July 21, 2005) (noting that while a malicious prosecution claim could not proceed against a government entity, it may be possible for a plaintiff to state such a claim against the employee). The undersigned agrees and recommends denying the Motion as to the malicious claim brought against Cowley, Coker, and Marlow.

### d. Invasion of Privacy Claims

Defendants next argue that Plaintiff's invasion of privacy claims fail as a matter of law. Plaintiff disagrees. South Carolina law recognizes three separate and distinct causes of action for invasion of privacy, including: (1) wrongful appropriation of personality; (2) wrongful publicizing of private affairs; and (3) wrongful intrusion into private affairs." *J.R. v. Walgreens Boots Alliance, Inc.*, No. 2020-CV-1767, 2021 WL 4859603, at *4 (4th Cir. Oct. 19, 2021) (quoting *Sloan v. S.C. Dep't of Pub. Safety*, 586 S.E.2d 108, 110, 355 S.C. 321 (S.C. 2003)).

Plaintiff first alleges an invasion of privacy claim based on the wrongful intrusion into private affairs. *See* Compl., ECF No. 1-1. To be liable under this theory, a defendant must have engaged in conduct that resembles "watching, spying, prying, besetting, [or] overhearing." *Doe 2 v. Associated Press*, 331 F.3d 417, 422 (4th Cir. 2003) (citing *Snakenberg v. Hartford Cas. Ins. Co.*, 383 S.E.2d 2, 5, 299 S.C. 164 (S.C. Ct. App. 1989)). Further, the intrusion must have invaded an area "which one normally expects will be free from exposure to the defendant." *Doe 2*, 331 F.3d at 422. Defendants assert that because Plaintiff does not allege any facts suggesting anyone watched or spied, Plaintiff's claim must fail. Defendants further argue Plaintiff fails to allege intrusion into an area one would expect to be private; instead, they point out that she alleges that Plaintiff was searched incident to an arrest and detainment. Defs.' Br. at 7.

Plaintiff alleges that she turned herself into the WCSO and was made to disrobe, was strip searched, and required to don prison clothing." Compl., ¶ 29. Plaintiff alleges that she had a reasonable expectation of privacy, which Defendants intruded upon, knowing their acts would cause Plaintiff to have to "undress and have her naked body searched, which humiliated, embarrassed, shamed, and otherwise caused Plaintiff great anguish and distress." Compl., ¶ 100. Strip searches incident to intake are usually related to preventing access to contraband, which is

a legitimate concern. *Munday v. Beaufort County*, No. 9:29-CV-02144-CDN, 2023 WL 2643792, at *6 (D.S.C. Mar. 27, 2023) (citing *Florence v. Bd. of Chosen Freeholders of Cnty. Of Burlington*, 566 U.S. 318, 332-34 (2012)).  For intrusions where there is no evidence of public disclosure, a plaintiff must show "a blatant and shocking disregard of his rights, and serious mental or physical injury or humiliation to himself resulting therefrom." *O'Shea v. Lesser*, 416 S.E.2d 629, 633, 308 S.C. 10 (S.C. 1992). In reviewing the allegations within Plaintiff's Complaint, the undersigned notes that while Plaintiff does not allege there was any public disclosure related to the strip search, as she alleges it occurred once she turned herself into WCSO, it is less clear how many individuals were involved in the strip search and whether it was necessary, given the circumstances of Plaintiff's charges. While the Complaint does not include any allegations that Marlow or Cowley personally engaged in the strip search or had any involvement involving the strip search of Plaintiff, Plaintiff does allege Coker specifically directed that the strip search occur. Compl., ¶ 29.  Accordingly, the undersigned recommends that this claim, the ninth cause of action for invasion of privacy, be dismissed as to Marlow and Cowley only.

The undersigned has also reviewed Plaintiff's invasion of privacy claim based on wrongful publication of private affairs and believes it survives dismissal.  Invasion of privacy based on the wrongful publication of private affairs involves alleging: (1) publication; (2) without any waiver or privilege; (3) private matters in which the public has no legitimate concern; (4) so as to bring shame or humiliation to a person of ordinary sensibilities. *Swinton Creek Nursery v. Edisto Farm Credit, ACA*, 514 S.E.2d 126, 131, 334 S.C. 469 (1999). In *Swinton Creek Nursery*, the Supreme Court of South Carolina pointed out that publicity, as opposed to mere publication is required to support this cause of action, and communication to a single individual or to a "small group of

people" will not give rise to an invasion of privacy claim. *Id.* Defendants argue that Plaintiff has failed to sufficiently plead the publication element of this claim but otherwise do not explain or point out any alleged deficiency in her pleading. To the extent Defendants believe Plaintiff has failed to adequately allege publicity to support this action, because she failed to allege communication to the public at large, the undersigned disagrees. Plaintiff has alleged Coker, Cowley, Marlow and the Town of Kingstree told "numerous third-parties" that she was terminated for theft, despite knowing this to be false. Compl., ¶ 104. She further alleges that Defendants Kennedy, Gardner, and WCSO acted in concert with the other Defendants to publicize her arrest in discussing these Defendants' practice of publishing "major" arrests on their Facebook page and in press releases. Compl., ¶ 107. These allegations suffice to adequately allege publication to more than a small group of people, and accordingly the undersigned does not recommend this claim be dismissed at this stage of the litigation.

### e. Civil Conspiracy

Defendants argue Plaintiff fails to state a claim for civil conspiracy against these Defendants, because Plaintiff has not sufficiently pled facts separate and independent from other wrongful conduct to state such a claim. To establish a claim for civil conspiracy under South Carolina law, a plaintiff must establish: (1) the combination or agreement of two or more persons; (2) to commit an unlawful act or a lawful act by unlawful means; (3) together with the commission of an overt act in furtherance of the agreement; and (4) damages proximately resulting to the plaintiff. *Paradis v. Charleston Cty. School District*, 861 S.E.2d 774, 780, 433 S.C. 562 (S.C. 2021). Because civil conspiracy is an intentional tort, an intent to harm "remains an inherent part of the analysis." *Paradis*, 861 S.E.2d at 780, n. 9. This court has recently affirmed that in order to plead a civil conspiracy claim under South Carolina law, a plaintiff must plead an intent to harm.

*Jinks v. Sea Pines Resort, LLC,* No. 9:21-CV-00138-DCN, 2021 WL 4711408, at *3 (D.S.C. Oct. 8, 2021). Further, one must allege "additional facts in furtherance of the conspiracy separate and independent from other wrongful acts alleged in the complaint." *Jinks*, 2021 WL 4711408, at *3. In seeking to establish such a claim, "[w]here the particular acts charged as conspiracy are the same as those relied on as the tortious act or actionable wrong, plaintiff cannot recover damages for such act or wrong." *Id.* (citing *Todd v. S.C. Farm Bureau Mut. Ins. Co.*, 278 S.E.2d 607, 612, 276 S.C. 284 (S.C. 1981) overruled on other grounds by *Paradis*).

Defendants argue Plaintiff simply makes conclusory allegations regarding a "tacit agreement" between all Defendants, while failing to identify any specific acts on the part of each Defendant to perpetuate a conspiracy. In response, Plaintiff argues she has sufficiently pled a claim for civil conspiracy. Within the Complaint, Plaintiff alleges that Defendants Coker and Marlow contacted other Defendants at the WCSO, requesting that they pursue false charges against Plaintiff, despite knowing the charges to be false. Compl., ¶ 88. Plaintiff argues these Defendants agreed to do so, and these Defendants, in concert, harmed Plaintiff. Compl., ¶ 89. Plaintiff also alleges that despite knowing prior to arresting and detaining her that she had not committed a crime, Defendants brought criminal charges against Plaintiff and arrested, detained, and prosecuted her, causing Plaintiff to suffer damages. Compl., ¶ 90. Plaintiff further alleges that all Defendants acted in combination to "spread the word" of Plaintiff's arrest and criminal charge in an effort to retaliate against and harm Plaintiff. Compl., ¶ 90. Plaintiff further alleges Coker called Gardner, seeking for Gardner to humiliate Plaintiff when she turned herself in. Compl., ¶ 91. In response to Defendants' argument that Plaintiff does not allege "separate and independent" facts to support a civil conspiracy claim, Plaintiff argues she included allegations regarding specific discussions between one or more Defendants concerning an agreement to conspire to harm

Plaintiff.

In reviewing the allegations in Plaintiff's Complaint, the undersigned finds that the facts as alleged are sufficient to state a civil conspiracy claim at this stage in the proceedings. Thus, the undersigned recommends denying the Motion on this ground.

### 4.   42 U.S.C. § 1983 Claims

#### a.   *Monell* Liability

Town of Kingstree argues Plaintiff has failed to adequately plead a § 1983 *Monell* claim against the Town of Kingstree. Liability under § 1983 involves a showing that "the official charged acted personally in the deprivation of the plaintiff's rights." *Wright v. Collins*, 766 F.2d 841, 850 (4th Cir. 1985). The doctrine of respondeat superior is inapplicable in these cases. *Id.*; *see Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004) (stating that there is no respondeat superior liability under § 1983). However, the Supreme Court case of *Monell v. New York City Department of Social Services*, 436 U.S. 658 (1978) held that municipalities can be liable only for their own illegal acts.  Pursuant to *Monell*, municipal liability can result "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." 436 U.S. at 694.

The Fourth Circuit case of *Spell v. McDaniel* explains the principles set out in the *Monell* decision and differentiates between a cause of action for deficient training and as compared to deficient policies. 824 F.2d 1380 (1987). In *Spell*, the Fourth Circuit explains that the "policy" at issue in a *Monell* claim can be a municipal ordinance, regulation, or formal or informal policies that authorize constitutional violations. *Id.* at 1385-86. The court described "custom or usage" as "persistent and widespread . . . practices of state officials [which] [a]lthough not authorized by written law, [are] so permanent and well-settled as to [have] the force of law." *Id.* at

1386 (citing *Monell*, 436 U.S. at 691). Furthermore, the court explained that a municipality is liable for a constitutional violation when the policy or custom is "(1) fairly attributable to the municipality as its 'own,' and is (2) the 'moving force' behind the particular constitutional violation." *Id.* at 1386-87. The court also explained that custom and usage "may be attributed to a municipality when the duration and frequency of the practices warrants a finding of either actual or constructive knowledge by the municipal governing body that the practices have become customary among its employees." *Id.* at 1387. Finally, there must be proximate cause or an "affirmative link" between the policy and the constitutional violation. *Id.* The *Spell* court found: "Neither the existence of such a policy or custom nor the necessary casual connection can be established by proof alone of the single violation charged." *Id.*

A policy or custom for which a municipality may be held liable can arise in a variety several: "(1) through an express policy, such as a written ordinance or regulation; (2) through the decisions of a person with final policymaking authority; (3) through an omission, such as a failure to properly train officers, that 'manifest [s] deliberate indifference to the rights of citizens'; or (4) through a practice that is so 'persistent and widespread' as to constitute a 'custom or usage with the force of law.'" *Lytle v. Doyle*, 326 F.3d 463, 471 (4th Cir. 2003) (quoting *Carter v. Morris*, 164 F.3d 215, 217 (4th Cir. 1999)). Plaintiff argues she has sufficiently alleged municipal liability via the decisions of persons with final policymaking authority; the fact that the Town of Kingstree failed to properly train employees; and through custom or usage. Pl.'s Br. at 19.

In looking at the allegations in Plaintiff's Complaint, she alleges that Coker and Marlow, who were final policymakers, implemented a policy of "unlawful detention without reasonable suspicion or probable cause." Compl., ¶¶ 173-175. Further, among other allegations regarding the individual Defendants as final policymakers, Plaintiff specifically alleges The Town of Kingstree

has a "custom, pattern, practice, or procedure" of instituting baseless criminal actions against individuals it "wishes to silence." Compl., ¶ 179. Plaintiff has not yet had the benefit of discovery, and the undersigned finds that at this early stage in the litigation, these allegations suffice to state a *Monell* claim against the Town of Kingstree.[6]

### b. Unlawful Seizure

Defendants argue Plaintiff fails to sufficiently plead an unlawful seizure claim pursuant to § 1983, as she does not allege these Defendants were the individuals involved in obtaining the arrest warrant, placing her under arrest, or any other personal participation on the part of these Defendants in that process. A malicious prosecution claim brought under § 1983 is properly understood as a Fourth Amendment claim for unreasonable seizure. *English v. Clarke*, 90 F.4th 636, 647 (4th Cir. 2024). To succeed on this type of claim, a plaintiff must show that one or more individuals: (1) caused; (2) a seizure of Plaintiff pursuant to legal process unsupported by probable cause; and (3) criminal proceedings terminating in Plaintiff's favor. *English*, 90 F.4th at 647. Plaintiff alleges that Defendants Marlow, Coker, and Cowley "caused a criminal complaint to be filed and prosecuted" despite them knowing that Plaintiff did not commit a crime, and she had already explained the circumstances surrounding the restaurant deposit. Compl., ¶ 131. She further alleges these Defendants illegally seized her in violation of the Fourth Amendment and pursuant to legal process unsupported by probable cause, and the judicial proceedings ultimately terminated in her favor. Compl., ¶¶ 131, 132. Plaintiff has therefore set forth allegations sufficient to establish,

---

[6] Relatedly, Defendants argue that Plaintiff fails to state a claim against Defendants Coker, Marlow, and Cowley in their official capacities as she has failed to allege Defendants were acting pursuant to an official, practice, policy or custom of the Town of Kingstree. *See* Defs.' Br. at 11-12. Based on the same allegations discussed in this section, the undersigned respectfully disagrees with Defendants' position and finds that Plaintiff has sufficiently pled the existence of an official practice, policy, or custom established by the Town of Kingstree and by which they were acting.

if proven, this type of Fourth Amendment claim.

Additionally, Plaintiff argues Defendants overlook the fact that, aside from the malicious prosecution claim, she also alleges Defendants Marlow and Coker unlawfully seized and detained her. A plaintiff asserting a false arrest claim under § 1983 is also stating a Fourth Amendment Claim for unreasonable seizure. *English*, 90 F.4th at 647. Plaintiff indeed alleges that these Defendants unlawfully detained her for several hours at a train depot, unlawfully detaining her at the police station, and unlawfully having her committed to the hospital, without reasonable suspicion, probable cause, or justification. Compl., ¶ 129. Aside from her allegations involving a malicious prosecution, these claims also suffice to adequately plead a Fourth Amendment claim against the individual Defendants.

c. Due Process

Finally, Defendants argue that Plaintiff's Fourteenth Amendment Due Process claim must be dismissed as this claim actually stems from her arrest and subsequent detainment, and Plaintiff has already alleged a § 1983 Fourth Amendment claim on those grounds. In response, Plaintiff argues that her Fourteenth Amendment claim is better characterized as a "fabricated evidence" claim. Pl.'s Br. at 37. It is Plaintiff's position that she specifically alleges that her due process rights were violated, because Defendants fabricated evidence and intentionally withheld exculpatory evidence related to the criminal charges brought against her. In *Harris v. Town of S. Pines*, the Fourth Circuit, in reversing a district court, considered a similar argument. 110 F.4th 644 (4th Cir. 2024). The Fourth Circuit explained that in a due process fabrication of evidence claim, "the alleged harm is that the entire panoply of rights afforded to criminal defendants was infected by the fabricated evidence thus wrongfully depriving the defendant of [their] liberty." *Harris*, 110 F.4th at 646. *Harris* also made clear that a plaintiff may assert a Fourteenth

21

Amendment fabrication of evidence claim for a crime in which a plaintiff has not been convicted. *Id.* at 646-48.

Plaintiff alleges that the individual Defendants "deliberately fabricated false allegations and intentionally withheld exculpatory information," and that they knew or should have known these actions would deprive Plaintiff of her due process rights. Compl., ¶ 148. Upon review of *Harris* and in considering the allegations within Plaintiff's Complaint, the undersigned recommends that based on the allegations within Plaintiff's Complaint, this claim should not be dismissed.

IV.     Conclusion

For the foregoing reasons, the undersigned recommends that the court grant in part and deny in part Defendants' Motion to Dismiss, ECF No. 4. Specifically, the undersigned recommends granting the Motion insofar as Plaintiff asserts any claims against the Town of Kingstree pursuant to the SCTCA, as well as granting the Motion with respect to Plaintiff's Ninth Cause of Action, invasion of privacy based on the wrongful intrusion into private affairs, against Defendants Town of Kingstree, Marlow, and Cowley. Otherwise, the undersigned recommends denying the remainder of the relief requested.

IT IS SO RECOMMENDED.

January 13, 2026                                Kaymani D. West
Florence, South Carolina                        United States Magistrate Judge

**The parties are directed to note the important information in the attached
"Notice of Right to File Objections to Report and Recommendation."**

22

## Notice of Right to File Objections to Report and Recommendation

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. [I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation. *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

**Robin L. Blume, Clerk**
**United States District Court**
**Post Office Box 2317**
**Florence, South Carolina 29503**

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).